IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAVIER ANTONETTY-RODRIGUEZ,<br><br>    *Petitioner,*<br><br>v.<br><br>NANCY GIROUX, et al.,<br><br>    *Respondents.* | CIVIL ACTION<br>NO. 16-01930 |

**PAPPERT, J.**                                                                                          April 25, 2016
**MEMORANDUM**

    Javier Antonetty-Rodriguez filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and later filed a motion to stay that petition and hold it in abeyance pending the resolution of a state court proceeding. Antonetty-Rodriguez's petition, however, is untimely and not subject to statutory or equitable tolling. Upon consideration of the record, Magistrate Judge Richard A. Lloret's Report and Recommendation ("R & R"), and Antonetty-Rodriguez's objections thereto, the Court adopts the R & R and denies both Antonetty-Rodriguez's petition and motion to stay.

I.

    Antonetty-Rodriguez shot and killed Jose Rivera over a $100 drug debt. (State Court Record, ECF Nos. 8-2–8-10, at A109–A110, hereinafter "App.") He was convicted of first degree murder, third degree murder, aggravated assault, carrying a firearm without a license, possession of an instrument of crime and three counts of criminal conspiracy on January 24, 2011. (App., at A76.) On February 16, 2011 he was sentenced to life in prison without the possibility of parole. (*Id.* at A30.) Antonetty-Rodriguez timely appealed to the Pennsylvania Superior Court, which affirmed the

1

judgment of sentence on May 25, 2012. *Commonwealth v. Antonetty-Rodriguez*, No. 512 MDA 2011, 2012 WL 3526462 (Pa. Super. Ct. 2012). His sentence became final thirty days later, on June 25, 2012. *See* 42 Pa. C.S.A. § 9545(b)(3); *Commonwealth v. Hernandez*, 755 A.2d 1, 10 (Pa. Super. Ct. 2000).

Antonetty-Rodriguez filed a timely Post Conviction Relief Act ("PCRA") petition on February 8, 2013. (App., at A132.) The trial court denied the petition on April 29, 2014. (*Id.* at A191.) Antonetty-Rodriguez appealed this denial to the Superior Court, which on July 18, 2015 quashed the appeal as untimely. (*Id.* at A205.) On March 24, 2016 Antonetty-Rodriguez filed a second PCRA petition which is still pending in state court. (*Id.* at A206.) He filed his petition for a writ of habeas corpus on April 21, 2016. (ECF No. 1.)

## II.

The Court reviews *de novo* those portions of the R & R to which Antonetty-Rodriguez has objected. *See* 28 U.S.C. § 636(b)(1); *see also Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 250 (3d Cir. 1998). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III.

Magistrate Judge Lloret recommends that Antonetty-Rodriguez's petition be dismissed with prejudice because it was filed beyond the statute of limitations prescribed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Antonetty-Rodriguez does not dispute the untimeliness of his petition. He contends, however, that he is entitled to equitable tolling because of newly discovered evidence.

## A.

AEDPA instituted a one-year statute of limitations for the filing of habeas corpus petitions:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Antonetty-Rodriguez's judgement became final—and AEDPA's statute of limitations began to run—on June 25, 2012. 28 U.S.C. § 2244(d)(1)(A). His timely PCRA petition, filed on February 8, 2013, tolled the AEDPA limitations period, but not before 228 days of the limitations period had elapsed. *See* 28 U.S.C. § 2244(d)(2). The trial court denied his PCRA petition on April 29, 2014 and explained that Antonetty-Rodriguez had thirty days to appeal the decision to the Superior Court. (*Id.* at A191.)

3

Antonetty-Rodriguez did not file a timely appeal—his notice of appeal was submitted to prison authorities on February 25, 2015, (*id.* at A192), and docketed March 6, 2015, (*id.* at A205).[1]

AEDPA's limitation period is tolled during "pending" state proceedings. 28 U.S.C. § 2244(d)(2). "The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, *provided that* the filing of the notice of appeal is timely under state law." *Evans v. Chavis*, 546 U.S. 189, 191 (2006) (citing *Carey v. Saffold*, 536 U.S. 214 (2002)). Thus, because Antonetty-Rodriguez did not *timely* appeal, AEDPA's limitations period began to run again on May 29, 2014, the day his time to appeal expired. *Cf. Swartz v. Meyers*, 204 F.3d 417, 424 (3d Cir. 2000) (holding that a PCRA petition is pending "during the time a prisoner has to seek review of the Pennsylvania Superior Court's decision *whether or not review is actually sought*.").

Because 228 days of the AEDPA limitations period had already run, Antonetty-Rodriguez's habeas petition was due October 13, 2014, 137 days after the limitations period began to run again.[2] Antonetty-Rodriguez filed his petition on April 21, 2016. (ECF No. 1.)

---

[1]   The Superior Court's order dismissing Antonetty-Rodriguez's untimely appeal explained that "[a] *pro se* filing submitted by a prisoner incarcerated in a correctional facility is deemed filed as of the date it is delivered to the prison authorities." (App., at A205.) Antonetty-Rodriguez's notice of appeal says it was received by prison authorities on February 25, 2015, (*id.* at A192), yet the Superior Court order says the notice of appeal was filed on March 6, 2015, (*id.* at A205). Regardless of which filing date is correct, Antonetty-Rodriguez's notice of appeal was filed ten months late.

[2]   The R & R considered Antonetty-Rodriguez's PCRA petition "properly filed" until thirty days after the Superior Court quashed his untimely appeal. Thus, it tolled Antonetty-Rodriguez's AEDPA limitations period until August 17, 2015 and calculated the habeas petition due date as January 1, 2016. *See* (R & R, at 3, ECF No. 9). Even under the R & R's more generous time calculation, Antonetty-Rodriguez's habeas petition would be over three months late. (*Id.*)

**B.**

Antonetty-Rodriguez concedes that his petition is untimely but contends that because he discovered "new evidence" in February 2016, he is entitled to statutory tolling under 28 U.S.C. § 2244(d)(1)(D). This provision, however, requires that the "factual predicate of the claim . . . could not have been discovered through the exercise of due diligence."

Antonetty-Rodriguez's "newly discovered evidence" consists of articles originally published in a local newspaper on February 23, 2011 and March 12, 2011 that recount the guilty plea and sentencing of a codefendant who testified against Antonetty-Rodriguez at trial. (App., at A218–A219.) The March 12th article explains that the sentencing was part of a deal tied to the codefendant's guilty plea. (*Id.*) At Antonetty-Rodriguez's trial the codefendant testified that he had not "been given any offer or any deal, any plea bargain in exchange for [his] testimony," but he hoped that the Commonwealth would take his testimony into consideration. (App., at A223–A224.)

These articles, Antonetty-Rodriguez suggests, are evidence that the codefendant perjured himself at trial and that the government was complicit in the perjury. The articles could have been discovered long before February of 2016 through the exercise of due diligence—they were published in the local newspaper just weeks after Antonetty-Rodriguez's sentencing.

**C.**

AEDPA's statute of limitations is subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 648–49 (2010). Equitable tolling is available if a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some

5

extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (internal quotations omitted)). "Generally, such a situation arises if (1) the [state] has actively misled the [petitioner]; (2) if the [petitioner] has in some extraordinary way been prevented from asserting his rights; or (3) if the [petitioner] has timely asserted his rights mistakenly in the wrong forum." *Urcinoli v. Cathel*, 546 F.3d 269, 272 (3d Cir. 2008). Equitable tolling should be applied sparingly. *See LaCava v. Kyler*, 398 F.3d 271, 275 (3d Cir. 2005).

Antonetty-Rodriguez is not entitled to equitable tolling. He does not allege facts that suggest he was pursuing his rights diligently or that extraordinary circumstances stood in the way of timely filing. His petition was eighteen months late and his "newly discovered evidence" has been in the public domain for five years.

## IV.

Antonetty-Rodriguez also argues that the prosecutor's alleged misconduct satisfies the requisite cause and prejudice requirements to excuse a procedural default. "The procedural default doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state *procedural* requirement. In these cases, that state judgment rests on independent and adequate *procedural* grounds." *Villot v. Varner*, 373 F.3d 327, 334 (3d Cir. 2004) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991)). A petitioner can escape a procedural default by "showing cause for the default, and prejudice from the denial of a federal right." *Buck v. Davis*, 137 S. Ct. 759, 770 (2017). A procedural default issue, however, is immaterial to whether a petition is timely filed under 28 U.S.C. § 2244(d).

6

The Court has already held that Antonetty-Rodriguez's petition is untimely; it need not decide whether his claims are in procedural default or if such default could be excused.

## V.

Antonetty-Rodriguez also filed a motion to stay and abey this petition pending the resolution of his second PCRA petition. (ECF No. 2.) The Supreme Court of the United States approved the "stay-and-abey" procedure in *Rhines v. Weber*, 544 U.S. 269 (2005). The Court in *Rhines* sought to help habeas petitioners who presented federal courts with "mixed petitions" (petitions that included both exhausted and unexhausted state claims). *See id.* at 275. The Court provided three factors for a district court to consider when evaluating the propriety of a stay-and-abey request: (1) the petitioner should have good cause for his failure to exhaust; (2) the unexhausted claims should be potentially meritorious; and (3) there should be "no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278. Moreover, the Court explained that this procedure "should be available only in limited circumstances." *Id.* at 277.

A stay-and-abey procedure presumes that a habeas petitioner filed a timely petition but did so before exhausting all of the claims contained within that petition. Here, Antonetty-Rodriguez's petition is untimely; there is no reason to stay the petition pending the resolution of his additional state law claims as his petition will still be untimely at the conclusion of his second PCRA proceeding.

## VI.

Because Antonetty-Rodriguez has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not debate the dispositions of his

claims, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).[3]

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[3] Third Circuit Local Appellate Rule 22.2 states: "At the time a final order denying a petition under 28 U.S.C. § 2254 or § 2255 is issued, the district judge will make a determination as to whether a certificate of appealability should issue. If the district judge issues a certificate, the judge must state the specific issue or issues that satisfy the criteria of 28 U.S.C. § 2253. If an order denying a petition under Section 2254 or Section 2255 is accompanied by an opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report. If the district judge has not made a determination as to whether to issue a certificate of appealability by the time of the docketing of the appeal, the clerk will enter an order remanding the case to the district court for a prompt determination as to whether a certificate should issue."